A89A0218. HOUT v. THE STATE.
(380 SE2d 330)

DEEN, Presiding Judge.

The appellant, Jackie Hout, was charged with selling marijuana and possessing marijuana with intent to distribute in violation of the Georgia Controlled Substances Act, but was convicted only for selling the contraband.

The evidence showed that Hout resided with several others in a house that, as described by another resident, was a neighborhood "7-11" for drugs. An undercover officer with the Cobb County Police Department purchased marijuana from one of the residents on or about August 19, 1987, although the officer was not allowed to enter the house at the time. On August 21, 1987, after obtaining a warrant to search the premises, the undercover officer returned to make another purchase. This time he entered the house and gave the purchase money to Hout, who counted the money while another resident, Jessie Cofield, fetched two pounds of marijuana from a closet that was referred to as "the office." At that point other police officers, who were listening to the transaction via a transmitter worn by the undercover agent, entered the premises and arrested Hout and Cofield. Over two more pounds of marijuana were found in the closet during the ensuing search of the house. No contraband or drug paraphernalia was found in Hout's bedroom.

At trial, Cofield testified that he owned the marijuana stored in the closet, and that Hout sold it for him on a commission basis. Hout,

however, denied any knowledge of or participation in Cofield's drug business. He explained that he had taken the agent's money because one of the other residents had told him someone was going to stop and leave some money owed to the other resident. *Held*:

1. Hout contends that the trial court erred in denying his motion to suppress the evidence seized during the search of the premises, because the search warrant was a legally defective, general warrant since it did not describe the persons to be searched. However, "[e]ven a 'John Doe' warrant is legally sufficient 'for a search of described premises.' *Fowler v. State*, 128 Ga. App. 501 (197 SE2d 502), U. S. cert. den. 414 U. S. 1000." *Giles v. State*, 149 Ga. App. 263, 265 (254 SE2d 154) (1979). "Here, as in *Fowler v. State* . . . , 'the incriminating evidence was found as a result of the search of the premises described in the warrant as opposed to the person. The description of the premises was sufficient for it particularly gave an exact location. Thus the warrant was not a general warrant as it related to the premises searched.' " *Mitchell v. State*, 150 Ga. App. 44, 45 (256 SE2d 652) (1979).

We also reject Hout's contention that the warrant was invalid because it did not specify any subunits to be searched. The undercover officer did know that multiple individuals resided in the house, but he was uninformed as to the specific arrangement between the residents. There were no external indications that the house was anything other than a single dwelling, and given the circumstances of such an investigation it would have been unrealistic for the undercover agent to have attempted to ascertain whether any subleases or "boarding-house" arrangement existed. See *Bing v. State*, 178 Ga. App. 288 (342 SE2d 762) (1986); *Jackson v. State*, 129 Ga. App. 901 (201 SE2d 816) (1973).

Lastly, Hout contends that the search warrant was invalid because the probable cause for the no-knock provision in the warrant was supplied by the unrecorded, oral testimony of the affiant officer. The officer testified that in seeking the search warrant he had informed the magistrate that several people possibly would be in the house at the time of the search and some firearms would likely be present. If giving notice of authority and presence would increase the peril of the officers conducting the search, a no-knock provision is authorized, and such was the case here. OCGA § 17-5-27; generally *Anderson v. State*, 249 Ga. 132 (5) (287 SE2d 195) (1982). Although the desirability of such a practice has often been expressed, there is "no requirement in the law of Georgia that requires rather than suggests that a magistrate court warrant hearing be recorded." *Callahan v. State*, 179 Ga. App. 556, 561 (347 SE2d 269) (1986).

2. Hout's contention that the trial court erred in refusing to charge the jury on equal access need not be considered, since that

legal theory was pertinent, if at all, only to the charge for possessing marijuana with intent to distribute, and Hout was acquitted of that charge.

3. The trial court instructed the jury that "[t]he jury will retire for the purposes of electing a foreperson, and upon receipt of the papers, you may then begin to deliberate together until all twelve of you reach a unanimous verdict." Hout waived his present objection to this charge by failing to raise it when specifically asked by the trial court if there were any objections to the jury charge. *Rivers v. State*, 250 Ga. 303 (7) (298 SE2d 1) (1982).

4. The record contains a handwritten request from the jury to rehear part of the testimony, but the transcript is silent as to any response by the trial court, the state, or the appellant. Hout contends that this omission abridged his statutory right to appeal and his due process rights. However, "[w]here the transcript or record does not fully disclose what transpired at trial, the burden is on the complaining party to have the record completed at the trial court under the provisions of OCGA § 5-6-41 (f) . . . When this is not done, there is nothing for the appellate court to review. [Cit.]" *Howe v. State*, 250 Ga. 811, 814 (301 SE2d 280) (1983).

*Judgment affirmed. Birdsong and Benham, JJ., concur.*

DECIDED MARCH 10, 1989.

*Daniel L. Henderson*, for appellant.
*Thomas J. Charron, District Attorney, Nancy I. Jordan, Assistant District Attorney*, for appellee.