**FIRST DIVISION
BARNES, P. J.,
GOBEIL and PIPKIN, JJ.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
https://www.gaappeals.us/rules**

June 27, 2024

# In the Court of Appeals of Georgia

A24A0557. ZAYAC v. THE STATE.

PIPKIN, Judge.

Appellant Brandon Zayac appeals the denial of his motion to withdraw his guilty plea to the offense of obscene internet contact with a child, see OCGA § 16-12-100.2 (e)(1). For the reasons that follow, we affirm.

1. The record before us shows that a user on the "Kik" app going by the name "Brandon Smith" initiated contact with a user named "Peyton." While "Peyton" represented to "Brandon Smith" that she was 14 years old, "Peyton" was, in fact, an undercover chat profile created as part of a sting operation. "Brandon Smith" continually initiated chats with "Peyton" and repeatedly sent sexually explicit messages and photographs through the app. Law enforcement thereafter connected

the pseudonymous account with Appellant and obtained a search warrant directed at Kik in Santa Monica, California, for various data associated with Appellant's Kik accounts. Some time thereafter, law enforcement also executed a search warrant at Appellant's residence where they found numerous items linking Appellant to the photographs sent to the "Peyton" account. Appellant later admitted his conduct to law enforcement, explaining that he only intended to "role play" and that he believed he was actually chatting with other adults. As relevant here, Appellant was indicted on the offense of obscene internet contact with a minor, see OCGA § 16-12-100.2 (e) (1), to which he eventually pleaded guilty.

Less than a month after sentencing -- and within the same term of court[1] -- Appellant moved the plea court to withdraw his guilty plea, arguing that plea counsel was ineffective for failing to challenge the search warrant directed at Kik. According to Appellant, the warrant lacked probable cause, and further, the magistrate judge lacked the authority to sign a warrant directed at an out-of-state entity. Following a hearing, the plea court denied the motion, concluding that Appellant's plea was knowingly and voluntarily made, that the warrant was facially valid, and that Appellant

---

[1] See OCGA § 15-6-3 (3).

had failed to demonstrate that, but for any alleged errors by counsel, he would not have entered his guilty plea. Appellant now challenges this ruling on appeal.

2. "After sentencing, a guilty plea may only be withdrawn if the defendant establishes that such withdrawal is necessary to correct a manifest injustice -- ineffective assistance of counsel or an involuntary or unknowingly entered guilty plea." (Citation and punctuation omitted.) *Green v. State*, 324 Ga. App. 133, 133 (749 SE2d 419) (2013). Here, Appellant continues to assert that he should have been allowed to withdraw his guilty plea because, he says, trial counsel was ineffective for failing to challenge the Kik warrant in a variety of ways. In order to prove this claim, Appellant

> must show both that his plea counsel's performance was constitutionally deficient and that the deficient performance prejudiced his defense. See *Strickland v. Washington*, 466 U. S. 668, 687 (III) (104 SCt 2052, 80 LE2d 674) (1984). To meet the first prong of the *Strickland* test, [Appellant] must overcome the strong presumption that counsel's performance fell within a wide range of reasonable professional conduct, and that counsel's decisions were made in the exercise of reasonable professional judgment. To meet the second prong of the test in the guilty plea context, [Appellant] must demonstrate that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial.

(Citations and punctuation omitted.) *Nelson v. Wilkey*, 309 Ga. 203, 207-208 (2) (845 SE2d 566) (2020). With these principles in mind, we turn to Appellant's claims.

(a) Appellant claims that plea counsel performed deficiently in two ways: by failing to argue that the affidavit supporting the Kik warrant was insufficient to provide probable cause for a warrant and by failing to argue that the Kik warrant was not signed by the proper judge. We address each issue in turn.

(i) Turning first to Appellant's claim that the affidavit underlying the Kik warrant was insufficient, it is well settled that

> [i]n determining probable cause for a search warrant, the magistrate is merely to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before the magistrate, including the veracity and basis of knowledge of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place. Ultimately, this Court's role on review is to determine if the magistrate had a substantial basis for concluding that probable cause existed to issue the search warrant. Further, doubtful cases should be resolved in favor of upholding search warrants.

(Citation and punctuation omitted. ) *State v. Hall*, 276 Ga. App. 769, 771 (624 SE2d 298) (2005).

Here, the warrant affidavit describes in great detail the sexually explicit exchanges between "Peyton" and "Brandon Smith." Appellant claims, however, that

the warrant affidavit "lacked probable cause tying the defendant to the alleged crime" because, he says, the warrant affidavit states only that "law enforcement tools" were used to determine that Appellant was "Brandon Smith." According to Appellant, this "conclusory statement" is insufficient to support probable cause. This argument misconstrues the warrant affidavit.

The statement about the use of "law enforcement tools" is not some conclusory allegation; instead, it is a statement of fact that law enforcement used an unspecified tool to assist in the identification of Appellant. Further, after the "law enforcement tools" language, the warrant affidavit then describes how -- once Appellant was identified as a potential culprit -- law enforcement compared known photographs of Appellant to those exchanged on Kik by "Brandon Smith," comparisons that included photographs "found on [Appellant's] Facebook profile showing the same tattoo on his left upper arm visible in the sexually explicit photo sent to Peyton." Consequently, the affidavit provided sufficient probable cause to support the issuance of a warrant. Cf. *Carson v. State*, 314 Ga. App. 515, 517(1) (b) (724 SE2d 821) (2012) (sufficient probable cause to search defendant's home where warrant affidavit indicated that a witness had described shooting suspect's clothes, another

5

witness had described defendant as wearing those clothes, and a witness had noticed the defendant in the area acting aggressive). Because the affidavit supporting the Kik warrant was sound, trial counsel did not perform deficiently in failing to challenge it. See *Lockheart v. State*, 284 Ga. 78, 80 (3) (663 SE2d 213) (2008) (defense counsel's failure to file a meritless motion to suppress evidence did not amount to ineffective assistance). Accordingly, Appellant is not entitled to relief on this claim.

(ii) Appellant next claims that trial counsel was ineffective for failing to argue that the Kik warrant was signed by the wrong judge. Specifically, Appellant asserts that the warrant in question was "an ordinary Magistrate Court search warrant" but that "Magistrates have no power to authorize searches beyond the physical jurisdiction of their court." Instead, Appellant claims that OCGA § 16-11-66.1 (c)[2] and

---

[2] See OCGA § 16-11-66.1 (c) ("Search warrants for production of stored wire or electronic communications and transactional records pertaining thereto shall have state-wide application or *application as provided by the laws of the United States when issued by a judge with jurisdiction over the criminal offense under investigation and to which such records relate.*")(emphasis supplied).

18 USC § 2703(a)[3] -- which concern how law enforcement may obtain stored electronic communications and transactional records like those at issue here -- require the warrant in this case to be signed by a *superior* court judge. We are not persuaded.[4]

---

[3] See 18 USC § 2703 (a) ("A governmental entity may require the disclosure by a provider of electronic communication service of the contents of a wire or electronic communication, that is in electronic storage in an electronic communications system for one hundred and eighty days or less, only pursuant to a warrant issued using the procedures described in the Federal Rules of Criminal Procedure (or, in the case of a State court, issued using State warrant procedures and, in the case of a court-martial or other proceeding under chapter 47 of title 10 (the Uniform Code of Military Justice), issued under section 846 of that title, in accordance with regulations prescribed by the President) *by a court of competent jurisdiction*.") (emphasis supplied).

[4] We also note that Appellant points to no binding authority -- and we are aware of none -- which interprets these provisions or addresses whether, in Georgia, a magistrate judge may authorize the type of warrant at issue here. As the State points out, magistrates have broad authority in the State of Georgia to issue warrants, see, e.g., OCGA § 15-10-2 (a) (1), and there is nothing to suggest that any Georgia court has considered the interplay of these statutes. Indeed, this argument has been twice presented to the Supreme Court of Georgia, but it has not yet been addressed. See *State v. Ledbetter*, ____ Ga. ____, ____ (2) (a) (ii) (899 SE2d 222) (2024) (declining to address the issue because it was being raised for the first time on appeal); *Moss v. State*, 298 Ga. 613, 616 (3) n.2 (783 SE2d 652) (2016) (pretermitting the argument that the search warrant in that case "was invalid because it was issued by a recorder's court rather than a superior court"). And counsel cannot be deficient for failing "to anticipate changes in the law or pursue novel theories of defense." (Citation and punctuation omitted.) *Washington v. State*, 271 Ga. App. 764, 765 (1) (610 SE2d 692) (2005).

As the plea court recognized below, the judge who signed the warrant had, in fact, been designated as a superior court judge at the time the warrant was signed.[5] According to the designation order, the magistrate judge was, at the relevant time, "fully clothed with all the same authority and powers exercised by the Fulton County Judges regularly presiding in the Atlanta Judicial Circuit during [July and August 2020]." In response, Appellant points out that portions of the warrant materials reflect that they originate in magistrate court rather than superior court, but the fact remains that *other* portions of the materials simply reference "Court of Fulton County, State of Georgia" or "Judge of the Fulton County [sic]." Given these details, especially the designation order, we agree with the plea court that any error here is a

---

[5] The plea court took "judicial notice" of the fact that the signing judge had been designated as a superior court judge, and the relevant designation order was attached to the order denying Appellant's motion to withdraw guilty plea. Now, on appeal, Appellant claims that he was entitled to notice and a hearing before the plea court took judicial notice of the order. However, the authority on which Appellant relies, *Graves v. State*, 269 Ga. 772 (504 SE2d 679) (1998), predates our current evidence code and no longer controls. See *Jaycee Atlanta Dev. v. Providence Bank*, 330 Ga. App. 322, 324 (1) n.4 (765 SE2d 536) (2014). Instead, judicial notice is now governed by OCGA § 24-2-201 (e), which affords a party the right to a hearing *only upon request*; this provision also allows such a request to be made *after* a court has taken judicial notice. Id. Appellant does not address OCGA § 24-2-201 (e), and nothing in the record reflects that he requested a hearing on the issue of judicial notice.

mere technical irregularity not affecting the substantial rights of the accused and, thus, would not support the suppression of the relevant evidence. See OCGA § 17-5-31. Accordingly, plea counsel cannot be deemed to have performed deficiently for failing to challenge it. See *Dent v. State*, 303 Ga. 110, 117-118 (4) (a) (810 SE2d 527) (2018).

(b) Finally, even if we were to conclude that plea counsel had performed deficiently here, we agree with the plea court that Appellant has wholly failed to meet his burden of demonstrating prejudice. We begin by noting that, while Appellant claims that the State needed the Kik records to convict him, the record is silent as to what was actually produced as a result of the Kik warrant, and neither party discusses it on appeal.[6] Cf. *Hill v. Lockhart*, 474 U. S. 52, 58-59 (106 SCt 366, 88 LE2d 203) (1985) ("[W]here the alleged error of counsel is a failure to advise the defendant of a potential affirmative defense to the crime charged [before pleading guilty], the resolution of the 'prejudice' inquiry will depend largely on whether the affirmative defense likely would have succeeded at trial.").

Moreover, Appellant offered no meaningful evidence or testimony as to prejudice at the hearing on his motion. Instead, he merely offered an affidavit from his

---

[6] We note that Appellant has also failed to address the issue of inevitable discovery. See *McClure v. State*, 361 Ga. App. 399, 402 (1) (a) (864 SE2d 601) (2021).

attorney stating that "[t]he Kik account and chat records were harmful to [Appellant] in negotiating a plea and/or preparing for trial." Apparently recognizing his evidentiary failing on appeal, Appellant asserts -- without citation of legal authority -- that his "[f]iling a motion to withdraw guilty plea due to ineffective assistance of plea counsel is *per se* proof that, but for counsel's actions, Appellant would have insisted upon a trial." However,

> [t]o show prejudice, [Appellant] must establish the reasonable probability that, but for his counsel's errors, he would have proceeded to trial rather than enter a guilty plea. Here, the [plea] court was presented only with [plea] counsel's conclusory statements with no underlying explanation, either from [Appellant] or his [plea] attorney, neither of whom attended the [motion] hearing, and the State had no opportunity to examine [Appellant] at all. In the absence of any evidence of his mindset, [Appellant] has not proven prejudice because he has provided nothing on which to determine whether there was a reasonable probability, rather than an abstract possibility, that he would have chosen to go to trial.

(Citations omitted.) *State v. Sabillon*, 280 Ga. 1, 3 (622 SE2d 846) (2005). As the Supreme Court of the United States has explained

> [t]he stakes for defendants are high, and many elect to limit risk by forgoing the right to assert their innocence. A defendant who accepts a plea bargain on counsel's advice does not necessarily suffer prejudice when his counsel fails to seek suppression of evidence, even if it would be reversible error for the court to admit that evidence.

10

*Premo v. Moore*, 562 U. S. 115, 129 (III) (B) (131 SCt 733, 178 LE2d 649) (2011). Accordingly, Appellant has failed to demonstrate prejudice and, thus, that he is entitled to withdraw his guilty plea.

For these reasons, we affirm the denial of Appellant's motion to withdraw his guilty plea.

*Judgment affirmed. Barnes, P. J., and Gobeil, J., concur.*