**SECOND DIVISION**
**BARNES, P. J.,**
**BOGGS and RICKMAN, JJ.**

**NOTICE: Motions for reconsideration must be** *physically received* **in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules**

**July 22, 2016**

# In the Court of Appeals of Georgia

A16A1074. TORRES v. THE STATE.

RICKMAN, JUDGE.

Ofelia Torres was charged with trafficking in methamphetamine and other crimes. She filed a motion to suppress the evidence seized during the execution of a search warrant for a residence, arguing that the materials submitted in support of the warrant contained insufficient facts to support a finding of probable cause for the warrant. The trial court denied the motion and Torres filed this appeal.[1] For the reasons that follow, we reverse.

On appellate review of a trial court's decision on a motion to suppress evidence, we accept the trial court's ruling on disputed facts unless it is clearly

---

[1] We granted Torres's application for interlocutory review. See Case No. A16I0026.

erroneous, but the trial court's application of the law to undisputed facts is subject to de novo review. See *Petty v. State*, 283 Ga. 268, 269 (1) (658 SE2d 599) (2008).

"A search warrant will only issue upon facts sufficient to show probable cause that a crime is being committed or has been committed." *State v. Palmer*, 285 Ga. 75, 77 (673 SE2d 237) (2009) (citing OCGA § 17-5-21 (a)).

> The magistrate's task in determining if probable cause exists to issue a search warrant is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the veracity and basis of knowledge of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place.

(Citations and punctuation omitted.) Id. On appeal, we apply a totality of the circumstances analysis "to determine if the magistrate had a substantial basis for concluding that probable cause existed to issue the search warrant," and we are mindful that "a magistrate's decision to issue a search warrant based on a finding of probable cause is entitled to substantial deference by a reviewing court." (Citations and punctuation omitted.) Id. at 78.

The record shows that, as part of an undercover narcotics investigation, Cherokee County law enforcement officers followed a target from his home to the

2

Cowan Road area of Acworth, where they lost sight of him. Later, the officers spotted the target in Woodstock, this time with a male passenger. They conducted a traffic stop and arrested the target for possession of methamphetamine. During the ensuing investigation, the target offered to show the officers where he had purchased the methamphetamine. From the location the target described, the officers believed the residence was located in Acworth. Accordingly, the officers contacted the City of Acworth Police Department and briefed them on the issue. The target, now informant, led the City's officers to the residence and told them that he had purchased the methamphetamine there earlier that day and had seen an additional two to three ounces of methamphetamine in the apartment. He also stated that a Hispanic female and Hispanic male lived in the apartment. While one officer returned to the police station to apply for a search warrant, other officers watched the residence. The officers saw no drug-related activity, but did observe a Hispanic male entering and exiting the residence.

The record further reveals that the officers did not have prior knowledge of any drug activity at that residence. They had, however, previously responded to calls about suspicious "oddball" activity at that address, and had made contact with a Hispanic female and male there. Those calls did not result in any arrests or ongoing

3

investigations and, at the time he applied for the search warrant, the City officer was not certain that he had been in contact with the same individuals as those referenced by the informant.

Relying on this information, the officer applied for and obtained a search warrant for the residence. The search resulted in the arrest of Torres and her co-defendant, Olvin Padilla.

On appeal, Torres argues that the trial court erred in denying her motion to suppress because the affidavit and application for the warrant were based on information which came from a confidential informant whose reliability was not sufficiently demonstrated and which was not sufficiently corroborated by police investigations. Torres maintains that, considering the totality of the circumstances, there was no probable cause to support the warrant. We agree.

> Where the State seeks to establish probable cause through information provided by an unidentified informant, the informant's veracity and basis of knowledge are major considerations in the probable cause analysis. An affidavit [and/or the sworn testimony] submitted in support of a search warrant must set forth sufficient facts from which the magistrate or judge can independently determine the reliability of both the information and the informant.

(Punctuation, footnotes, and emphasis omitted). *Lyons v. State*, 258 Ga. App. 9, 11 (1) (572 SE2d 632) (2002).

It is undisputed that, prior to the search warrant at issue in this case, the informant had not established a history of reliability with the City's law enforcement department, and the officers did not investigate the informant's criminal history before relying on the informant's statements to apply for the search warrant. In cases where, as here, a confidential informant has not been shown to be credible or reliable, the information he provides may be proven trustworthy if portions of the information are sufficiently corroborated by law enforcement. *Lyons*, 258 Ga. at 11 (1). For the corroboration to be meaningful, however, "the information corroborated must include a range of details relating to future actions of third parties not easily predicted. That is, the tip must include inside information not available to the general public; otherwise, the corroboration is not sufficiently meaningful to show reliability." (Punctuation and footnote omitted.) Id. at 11-12 (1). In *Lyons*, the affidavit in support of the warrant stated that the informant had told officers that "Claude Lyons" was wanted in Florida on narcotics charges, that Lyons was using a certain apartment as a drug stash house, and that the informant had seen several ounces of cocaine in the residence. A police investigation corroborated the informant's identification of Lyons

5

as a fugitive from Florida, as well as his address and vehicle information. Id. at 10 (1). Despite that corroboration, we found error in the trial court's denial of the defendant's motion to suppress. In our opinion, we emphasized that "[a]n unvarnished statement that the informant has seen drugs in someone's house cannot establish probable cause to search," and that, although officers corroborated the informant's identification of the defendant's residence and vehicle, the confirmation of such "publicly available details" was not sufficient corroboration of illegal activity. (Footnote omitted.) Id. at 12 (1).

In the instant case, the informant gave some details as to where and when he saw the drugs in the residence – according to the application for the search warrant, the informant stated that he saw two to three ounces of methamphetamine "sitting on a shelf in the residence" earlier that day when he bought drugs there – but he did not provide the officers with the names or any identifying details of the individuals living in the residence, except that they were a Hispanic male and female. Even if we accept the officers' observation of a Hispanic male entering and exiting the residence as corroboration of the informant's assertion that a Hispanic male lived there, this detail was not sufficient to establish that the informant was a credible source of information

6

as to the alleged criminal activity at the residence because it is not a detail that would be unavailable to the general public. See *Lyons*, 258 Ga. App. at 10-11 (1).

The State contends that, despite the informant's lack of established credibility and the very limited amount of corroborating surveillance by the police, the warrant was nonetheless justified under the totality of the circumstances. In support of its argument, the State emphasizes that the informant provided information that was against his own penal interest and that his statements were consistent with the officers' observations, including their tracking him to the area near the residence.

The State is correct that "[w]hen a named informant makes a declaration against his interest and based on personal observation, that in itself provides a substantial basis for the magistrate to credit his statement." (Citation and emphasis omitted.) *State v. Wesson*, 237 Ga. App. 789, 791 (516 SE2d 826) (1999). We have explicitly held, however, that this "principle of law applies to named informants, i.e., those informants whose identities have been disclosed to the magistrate." (Citations and emphasis omitted.) Id. In this case, the informant was not identified to the magistrate, so the statement against interest rule does not control. See id.; see also *Bragg v. State*, 249 Ga. App. 430, 431-432 (2) (548 SE2d 121) (2001).

As to the State's reliance on the fact that Cherokee County officers had tracked the informant to the area near the residence before they found him with methamphetamine, we note that nothing in the record indicates how long the informant was out of the officers' view or clearly indicates how close he was to the residence at issue. Consequently, these additional considerations do not overcome the weaknesses in the information upon which the warrant was based.

Because the application and affidavit for the search warrant in this case contained insufficient information to allow a finding of probable cause to search the residence, the trial court erred in denying Torres's motion to suppress.

*Judgment reversed. Barnes, P. J., Boggs, J., concur.*