**FIRST DIVISION**
**BARNES, P. J.,**
**MCMILLIAN and REESE, JJ.**

**NOTICE: Motions for reconsideration must be**
***physically received* in our clerk's office within ten**
**days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules**

**March 14, 2019**

# In the Court of Appeals of Georgia

A18A1866. THE STATE v. PEREZ.

MCMILLIAN, Judge.

In this drug trafficking case, the State appeals the trial court's grant of a motion to suppress all of the evidence seized at a residence pursuant to two search warrants.[1] Because we find that the affidavits underlying these warrants provided the magistrate with sufficient information to support probable cause, we reverse the trial court's order granting the motion to suppress.

Under OCGA § 17-5-21 (a), the issuance of a search warrant must be based upon an affidavit "which states facts sufficient to show probable cause that a crime is being committed or has been committed[.]" This means that the "search warrant

---

[1] Appellee Irving Arroyo Perez was apparently in the apartment at the time of the searches, and he was arrested in connection with the contraband that was found.

must be supported by probable cause, or reasonable grounds, to believe that evidence of a crime will be found in a particular place." *Hamlett v. State*, 323 Ga. App. 221, 228 (1) (b) (753 SE2d 118) (2013).

> The magistrate's task in determining if probable cause exists to issue a search warrant is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the "veracity" and "basis of knowledge" of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place.

*State v. Palmer*, 285 Ga. 75, 77 (673 SE2d 237) (2009). "The test for probable cause is not a hypertechnical one to be employed by legal technicians, but is based on the factual and practical considerations of everyday life on which reasonable and prudent men act." (Citation and punctuation omitted.) *Glispie v. State*, 300 Ga. 128, 133 (2) (793 SE2d 381) (2016).

A defendant may seek to suppress evidence seized pursuant to a search warrant on the ground that there was no probable cause for the issuance of the warrant. OCGA § 17-5-30 (a) (2).[2] Where a motion to suppress asserts lack of probable cause,

---

[2] OCGA § 17-5-30 (a) (2) provides:

A defendant aggrieved by an unlawful search and seizure may move the

the burden of showing that the search and seizure were lawful shall be on the state. This burden upon the state is satisfied by production of the warrant and its supporting affidavit, and by showing either by those documents or by other evidence that the warrant is not subject to the statutory challenge alleged[.]

(Citation and emphasis submitted.) *Smith v. State*, 324 Ga. App. 542, 545 (1) (751 SE2d 164) (2013). Therefore, "[t]he State must prove that the challenged search was supported by a factually sufficient warrant." *Glenn v. State*, 302 Ga. 276, 281 (III) (806 SE2d 564) (2017). See also *Hamlett*, 323 Ga. App. at 232 (1) (b) (when defendant asserts lack of probable cause, State must show that probable cause existed).

On appeal,

[o]ur appellate courts will review the search warrant to determine the existence of probable cause using the totality of the circumstances analysis set forth in *Illinois v. Gates*, 462 U.S. 213 [103 SCt 2317, 76

---

court for the return of property, the possession of which is not otherwise unlawful, and to suppress as evidence anything so obtained on the grounds that: . . . [t]he search and seizure with a warrant was illegal because the warrant is insufficient on its face, there was not probable cause for the issuance of the warrant, or the warrant was illegally executed.

3

LE2d 527] (1983). The duty of the appellate courts is to determine if the magistrate had a substantial basis for concluding that probable cause existed to issue the search warrant. The Fourth Amendment requires no more.

(Citations and punctuation omitted.) *Palmer*, 285 Ga. at 78. And in a case such as this, where the facts underlying the trial court's ruling on a motion to suppress are undisputed, "the trial court's application of the law to undisputed facts is subject to de novo review, keeping in mind that a magistrate's decision to issue a search warrant based on a finding of probable cause is entitled to substantial deference by a reviewing court." (Citations and punctuation omitted.) Id. "Indeed, even doubtful cases should be resolved in favor of upholding a magistrate's determination that a warrant is proper." (Citation and punctuation omitted.) *Creamer v. State*, 337 Ga. App. 394, 396 (788 SE2d 69) (2016).

Here, because the magistrate only considered the evidence in the warrant applications in issuing the search warrants, our analysis is confined to the four corners of those documents. See *Coleman v. State*, 337 Ga. App. 304, 306 (1) (787 SE2d 274) (2016). On October 20, 2016, a Lawrenceville County Police Investigator (the "Investigator") assigned to the Gwinnett Metro Task Force ("GMTF") applied for Warrant No. 16X-01433 (the "First Warrant") on the grounds that there was

4

probable cause to believe that the crime of trafficking in methamphetamine (more than 28 grams, less than 200 grams) was being or had been committed at an apartment in Duluth, Georgia. After setting out his experience and qualifications, the Investigator averred that a named Homeland Security ("HS") investigator had received information from a confidential reliable informant that there were drugs and guns at the apartment. In response to this information, HS investigators set up surveillance of the apartment and observed an automobile there matching the informant's description of a car belonging to unnamed suspects. These investigators observed Richard Pineda leave the apartment carrying a bag and drive away in that car, which they determined was registered to him, to another address in Lawrenceville, Georgia. GMTF and HS investigators set up surveillance at the Lawrenceville address and some time later observed two suspects enter that location, stay a short time, and then leave; each of these suspects was later stopped and methamphetamine was located in their possession.

The affidavit further provided that HS and GMTF investigators served a search warrant at the Lawrenceville address,[3] where Pineda was the only individual inside, and "located handguns, cellular telephones, [a] large amount of suspected cocaine and

---

[3] Perez is not contesting this search warrant.

[a] large amount of suspected Methamphetamine, and US Currency." A crime analyst conducted a background search on Pineda and determined that one of the addresses listed for him was the apartment in Duluth. The Investigator averred that he sought the First Warrant to search that apartment in order to find U.S. currency, ledgers, and documents relating to the transportation and distribution of illegal narcotics, cell phones, plastic bags, cellophane wrap, photographs, and tools consistent with counting and weighing. The magistrate issued this warrant, and it was executed on the Duluth apartment.

The Investigator submitted the application for a second warrant a short time later, asserting he had probable cause to believe that the offenses of trafficking in methamphetamine (more than 28 grams, less than 200 grams) *and* possession of gun during the commission of that crime were being or had been committed. In the supporting affidavit, the Investigator cited the same facts used to support the First Warrant and additionally averred that during the execution of the First Warrant at the apartment, GMTF and HS investigators had located a substance "which field tested positive for Methamphetamine, weapons[,] and [a] large amount of cash."

Although the affidavits supporting the Warrants (hereinafter collectively the "Affidavits") appear to be based almost entirely on hearsay, as the Investigator never

6

indicates that he had any personal involvement in gathering the facts contained therein, "[h]earsay and even hearsay upon hearsay may be sufficient" to furnish probable cause if the magistrate is given "a substantial basis for crediting such hearsay." (Citation omitted.) *Cochran v. State*, 281 Ga. 4, 5-6 (635 SE2d 701) (2006). See also *Palmer*, 285 Ga. at 77 (magistrate must determine the reliability of such hearsay information); *Nichols v. State*, 336 Ga. App. 287, 287 (783 SE2d 918) (2016) (same). Therefore, an affidavit must contain sufficient facts to "allow a magistrate to make an independent determination of probable cause based on facts, and wholly conclusory statements will not suffice." *Shirley v. State*, 297 Ga. 722, 724 (777 SE2d 444) (2015).

The trial court correctly concluded that the information initially provided by the "confidential reliable informant" was insufficient in and of itself to support probable cause to search the apartment as the Affidavits provide no further information about this source to allow the magistrate to make an independent determination regarding his reliability. See *Pailette v. State*, 232 Ga. App. 274, 277 (501 SE2d 603) (1998) (statement that an informant is reliable, standing alone, is conclusory and cannot support a substantial basis for the magistrate to determine the existence of probable cause). Moreover, with regard to the apartment, the informant

7

stated only that there were drugs and guns there, and "an unvarnished statement that the informant has seen drugs in someone's house cannot establish probable cause to search." (Citation and punctuation omitted.) *Torres v. State*, 338 Ga. App. 269, 271 (789 SE2d 634) (2016). Nevertheless, in a case such as this, where the Affidavits fail to provide the magistrate with a independent basis for determining that a confidential informant is credible or reliable, "his tip nevertheless may be considered trustworthy if portions of it are sufficiently corroborated by the police." *Whatley v. State*, 335 Ga. App. 749, 752 (782 SE2d 831) (2016).

Here, the Affidavits cite the informant's description of the "suspects' vehicle" as a "silver Toyota with a drive out tag." HS investigators identified a vehicle matching that description at the apartment and determined that it was registered to Pineda. Pineda traveled in that car from the apartment to the Lawrenceville address, where investigators set up surveillance and observed actions by two suspects consistent with a drug buy. Traffic stops were later initiated, and both stops resulted in the discovery of a substance that field-tested as methamphetamine. A subsequent search of the Lawrenceville address pursuant to a separate warrant found Pineda inside with large amounts of cocaine and methamphetamine, evidence that the Investigator cited to establish probable cause of trafficking in methamphetamine. The

8

Affidavits connect the drug activity from the Lawrenceville address back to the Apartment based on a background check conducted by a crime analyst on Richard Pineda, which revealed that "one of the addresses for him was listed as [the apartment]." And Pineda had just been observed leaving the apartment with a bag and traveling to the Lawrenceville address.

We find that the evidence in the Affidavits sufficiently corroborated the information received from the informant and established a nexus between the apartment and the Lawrenceville address. Therefore, based on the totality of the circumstances, we find that the Warrants were supported by probable cause. See *Briscoe v. State*, 344 Ga. App. 610 (811 SE2d 426) (2018) (nexus established between controlled buy in car and apartment identified as suspect's residence where informant told police that suspect was distributing cocaine from his car and surveillance at apartment showed that suspect entered his residence about ten minutes before driving in his car to the controlled buy set up by police); *Davis v. State*, 256 Ga. App. 299 (568 SE2d 161) (2002) (probable cause existed to search suspect's Cobb County apartment where affidavit reflected that informant told police that suspect lived in that apartment and was using it to store and sell cocaine; following controlled buy, officers found correspondence and insurance card in suspect's

9

possession with Cobb County address); See *Munson v. State*, 211 Ga. App. 80 (438 SE2d 123) (1993) (probable cause supported search warrant for suspect's residence where informant told police suspect was growing marijuana at his home and work; investigators independently confirmed suspect's work status and addresses; and other investigators discovered marijuana growing at the work location).

Accordingly, we reverse the trial court's order granting Perez's motion to suppress.

*Judgment reversed. Barnes, P. J., and Reese, J., concur.*